Mr. Chief Justice Johnson delivered the opinion of the Court. The first point presented relates to the equity of the bill. The complainants allege, substantially, that the defendant by his attorney agreed at the return term of the garnishment that as they had already filed an answer in another case broadly denying any indebtedness to Everett, or that they had any of his property in their possession or under their control, they need not answer his garnishment, and that he would not proceed any further against them, and that under such assurances they left the court fully satisfied they had been discharged from all liability in regard to said suit. They further allege no steps were taken nor any entry of record made from the October term, A.D. 1842, (the return term of the garnishment) until the 17th of April, 1845, at which time judgment by default was rendered against them, and that they were wholly ignorant that the judgment had been so rendered until after the adjournment of the court. This agreement, set up in the bill, is neither admitted nor denied in direct and positive terms; but, on the contrary, it is evaded by a general and sweeping denial that any act had been done either by himself, his counsel or attorneys, which should, in the least, have induced them not to make their defence at law, if they had any, but that, on the contrary, they were warned and notified, at the very term of said court at which said judgment was rendered, that said cause was pending against them and that they had not answered. The first allegation in respect to notice to the complainants, contained in the answer of the defendant, tending to negative the idea of surprise, is that at the April term, 1845, (the term at which judgment by default was taken against the complainants) the complainants and also their attorney, Greenwood, as he was informed and believed, did attend and that having wholly failed to file any answer, the court on the last day of the term rendered judgment against them. The second allegation in respect to the same matter is, that one of the complainants, at least, during the term at which said judgment was rendered, was informed of said suit and told that he had better attend to it. And the third is, as heretofore stated, that they the complainants were warned and notified at the very term of said court at which said judgment was rendered, that said cause was pending against them and that they had not answered. If the defendant had gone farther and also denied that he had not only done any act but that he had not uttered one solitary word that was in the least calculated to induce the complainants to decline putting in their answer, still it would have been utterly insufficient as it would not have been responsive to the allegation in the bill. If he had denied the agreement s,et up in the bill the complainants could then have tendered him an issue upon it, and its truth or falsity could have been manifested by the proof. It was certainly a most material allegation in -the bill, as it formed the whole foundation upon which its equity rested, and consequently, if not denied by the answer, stood confessed as true. It is not deemed necessary to notice the subsequent averment in. the answer in which it is denied that the defendant ever said or did any thing whereby the complainants either were or could be misled or deceived, as it has already been ruled that it could not have drawn the allegation in the bill in issue. Under this construction the general denial in the answer is inadmissible by way of plea. The question then to be decided is whether it could avail the defendant in the way of a demurrer, as práyed in the answer. We think not. If it is once admitted that the agreement was actually made, it is clear that unless it has been nullified by matter subsequent, it constituted a full and perfect equity, as in our opinion it was well calculated to entrap and surprise the complainants. The question then is, has it been nullified or avoided? Where an answer is put in issue, what is confessed and admitted need not be proved; but the defendant must prove what he insists on by way of avoidance. The chancellor of New York, in the case of Hart vs. Ten Eyck, (2 John. Ch. R. 88) when commenting upon the rule laid down by L. Ch. J. Cowper, in 1707, reported in Gilberts Law of Evidence, said, “ The answer was put in issue and it was urged that the defendant having charged himself and no testimony appearing, he ought to find credit when he swore in his own discharge. But it was resolved by the court that when an answer was put in issue, what was confessed and admitted by it, need not be proved, but that the defendant must make out by proof what was insisted on by way of avoidance.” The defendant, by his failure to deny the agreement charged in the bill, in such a manner as to put its truth in issue, has virtually admitted it and consequently what he has set up going to negative the presumption of surprise, is by way of avoidance and therefore should have been supported by prooi aliunde. If any thing transpired subsequently to the agreement set up in the bill, which is relied upon by the defendant to release him from it, it is affirmative matter and consequently should have been supported by proof. It is clear from this view of the whole case, that upon the merits the complainants showed themselves entitled to be relieved from the judgment at law. But the question here is, whether the decree was warranted in the shape that it was rendered by the circuit court. The court of appeals of Kentucky, in the case of Young vs. Downer, (5 Litt. 9) said, “We could not sustain the decree of the court below, if the merits of the cause were in its favor. It directly sets aside the jugdment at law, and awards a new trial, totidem verbis. We cannot concede to the chancellor the power of setting aside and altering the records of a court of law. If the powers of a chancellor were separated from the person of the judge of a court of law, which is done elsewhere and may be done here, we cannot tell how the chancellor would enforce such a decree — whether he would retry the cause himself or compel the court of common law to do it. Hence this court has decided that the chancellor must in such case, act on the person only and not on the proceedings at common law; or, in other words, he ought to decree that unless the defendant in chancery consent in the common law court to a new trial in a reasonable time, his hands shall be tied and be perpetually restrained from executing his judgment.” We entertain no doubt but that this is the correct doctrine, and that although the. case upon the merits is in favor of the complainants, yet inasmuch as the decree sets aside and vacates the judgment at law, it is for that cause erroneous and consequently ought to be reversed. The decree of the circuit court of Marion county sitting in chancery in this cause, is therefore reversed, annulled and set aside and the cause remanded to said circuit court to be proceeded in according to law and not inconsistent with this opinion; and it is further ordered that upon its return to said court both parties have leave to amend their pleadings if they shall desire to do so.